Guy SHAPIRA, Plaintiff,

v.

CHARLES SCHWAB & CO., INC., et ano., Defendants.

No. 02 CIV. 0425(LAK).

United States District Court, S.D. New York.

Oct. 3, 2002.

David A. Zelman, for Plaintiff.

Ned H. Bassen, Michelle W. Goldman, Hughes Hubbard & Reed LLP, for Defendant Charles Schwab & Co., Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case involves a claim that defendant Charles Schwab & Co., Inc. ("Schwab") improperly inquired into plaintiff's supposedly sealed arrest record and, upon discovering that he had been arrested, therefore denied him employment in a position that allegedly had been promised to him. The matter is before the Court on Schwab's motion for summary judgment dismissing the complaint.

### Facts

#### The Arrest and the Records

On June 3, 1999, plaintiff, a licensed securities broker, was arrested for petit larceny. The parties agree that the arrest was the product of mistaken identity and that no charges ever were brought against him. Indeed, plaintiff asserts that he "was not involved in any 'court proceeding,' ... never [was] charged with a crime[, and that n]o charging instrument was ever filed." [1]

Plaintiff contends that the New York Criminal Procedure Law resulted in the sealing of the arrest record once prosecution was declined. [2] The implicit assumption that the statute applied to this record is questionable as a matter of law. [3] But the salient point for present purposes is that the record in fact was not sealed immediately, whatever the statute intend-

---

1. Pl. 56.1 St. ¶ 13.

2. *Id.* ¶ 37.

3. N.Y. CRIM. PROC. L. § 160.50 (McKinney 1992), with exceptions not here relevant, requires that records of "a criminal action or proceeding" be sealed "[u]pon the termination" thereof "in favor of" the accused. A "criminal action," as defined by the statute, "commences with the filing of an accusatory instrument against a defendant in a criminal court ..." *Id.* § 1.20, subd. 16. "Criminal proceeding" in turn "means any proceeding which (a) constitutes a part of a criminal action, or (b) occurs in a criminal court and is related to a prospective, pending or completed criminal action ... or involves a criminal investigation." *Id.* subd. 18. As no accusatory instruction ever was filed against plaintiff, the arrest record was not a record of a "criminal action." Nor was there any "criminal proceeding." Section 1.20, subd. 18(a), is not satisfied because the lack of any accusatory instrument precludes the arrest record from having been a record of "a part of a criminal action." And Section 1.20, subd. 18(b), is not satisfied because nothing ever occurred in any court.

While the considerations that resulted in the adoption of CPL § 160.50 are at least as applicable to situations in which there has been an arrest, but no criminal prosecution, the Legislature appears to have drawn the statute more narrowly. In any case, however, there is no need to decide this point here because, as appears in the text, the arrest record was not in fact sealed promptly upon a determination not to proceed against plaintiff.

ed.[4] Plaintiff evidently learned as much in or about February 2000, as he then commenced a proceeding to seal the arrest record, a proceeding that ultimately resulted in an order and judgment in plaintiff's favor, which was entered on June 2, 2000.[5] The interval between the mid–1999 arrest and the mid–2000 sealing order, however, was to prove significant for purposes of this case, as the National Association of Securities Dealers, Inc. ("NASD") learned of the June 3, 1999 arrest by March 2000.[6]

*The Employment Application at Schwab*

In December 2000, plaintiff applied for corporate relationship manager and sales manager positions with Schwab.[7] Following an initial interview, he filled out an employment application and signed a form authorizing Schwab "to have full access to any and all court records pertaining to any criminal proceeding in which I have been involved, either as reflected on this form or on my employment application form, or as revealed in the records of the" Central Registration Depository of the NASD.[8] These forms then were faxed from Schwab's New York office, where plaintiff

had been interviewed and where his application was pending, to Schwab's Risk Management & Investigations ("RMI") department in San Francisco for the purpose of RMI conducting a background check.[9] RMI then made inquiry of the NASD and learned that plaintiff had been arrested for petit larceny on June 3, 1999.[10]

At some point, plaintiff had a second interview in New York at which he claims he was promised a job. His pertinent deposition testimony was as follows:

"Q * * * My first question is, what representations did Schwab make to you that you would in fact be employed?

"A I was specifically requested when I could start. I was specifically requested for compensation. Expected compensation. I was specifically discussed and outlined the job duties. The preference of what position would be best suited for me from the two open positions, by the hiring manager. I was told specifically that I would be contacted shortly and this was a sure thing. In addition, I was asked to follow-up, after multiple inter-

---

4. Plaintiff sued the City for wrongful disclosure of the arrest record and obtained a settlement of $17,500. Def. 56.1 St. ¶ 39. (All references to defendant's Rule 56.1 Statement are to paragraphs the truth of which is admitted by plaintiff.)

5. Goldman Aff. Ex. L.

6. This is clear because plaintiff's then employer advised him in March 2000 that the NASD had informed it that plaintiff had been involved in a "disciplinary matter" on June 3, 1999 and requested details from plaintiff. Plaintiff concedes that the "disciplinary matter" actually was the arrest. Def. 56.1 St. ¶ 33; Goldman Aff. Ex. J (referring to the June 3, 1999 "disciplinary matter"); Shapira Dep. (Goldman Aff. Ex. D) 16–17 (acknowledging that the June 3, 1999 "disciplinary matter" was the arrest).

7. Def. 56.1 St. ¶ 8

8. Goldman Aff. ¶ 9 & Ex. H.

It is interesting to note that, although the parties have not made much of it, plaintiff has taken the position that these forms did not consent to Schwab's inquiry into his arrest record because consent was granted to inquire only with respect to "court records pertaining to any criminal proceeding in which [plaintiff] ha[s] been involved" whereas the arrest record was neither a court record nor related to any criminal proceeding. *Compare* Def. 56.1 St. ¶ 13 *with* Pl. 56.1 St. ¶ 13. This of course is inconsistent with his contention that N.Y. Crim. Proc. L. § 160.50 required that the record be sealed, as that statute does not apply unless the record was of "a criminal action or proceeding." *Supra* note 3.

9. Def. 56.1 St. ¶ 15.

10. Griffin Aff. ¶¶ 4–5.

Plaintiff had not disclosed the arrest on his employment application.

views, with a digitized document from a presentation that I had made to Schwab.

\*    \*    \*    \*    \*    \*

"Q The next one, the second part says this was a sure thing. You would·be contacted shortly and this was a sure thing. Did someone say those exact words to you?

"A Zachary Jolly [one of the interviewers] made it very clear that I would be contacted very shortly, within a day or so, and that at that point an offer would be formally presented." [11]

He testified also that he was told "the only impediment to his being hired in the position he applied for was to check his registration status with the National Association of Security [*sic*] Dealers, Inc." [12]

Schwab, on the other hand, denies that any promises were made. It contends that, immediately after the second interview, the interviewers who met with plaintiff unanimously concluded that he was not right for either of the jobs. And, of course, it is undisputed that no job offer ever was forthcoming.

The record concerning the knowledge of the plaintiff's arrest record by the four Schwab interviewers is murky, notwithstanding the categorical denials in Schwab's memorandum of law. Mr. Jolly, one of the Schwab interviewers, testified that he was not aware of the arrest record. [13] Another interviewer, Ms. Mabel, said that the interviewers never "discussed" plaintiff's arrest among themselves and that she had not discussed it with the RMI employee in San Francisco. [14] However, Ms. Mabel recalled a conversation in which the RMI employee advised her that Mr. Shapira "wasn't forthcoming with his answers," requiring additional investigation. [15] No affidavit or testimony of the other interviewers was submitted on the motion. The deposition testimony of the San Francisco RMI employee who learned of the arrest record, at least to the extent that it has been submitted to the Court, falls far short of claiming that she never advised the New York personnel of the arrest.

### *Discussion*

Plaintiff makes three claims. He contends first that Schwab violated the New York State and New York City Human Rights Laws [16] by inquiring into his allegedly sealed arrest record. Second, he asserts that plaintiff unlawfully discriminated against him because of the arrest. Finally, he contends that Schwab is liable to him for the failure to hire on a theory of promissory estoppel.

### A. *The Inquiry*

█ The relevant portions of the statutes in question provide, in substantially identical language, [17] that:

"It shall be an unlawful discriminatory practice, *unless specifically required or permitted by statute [any other law]*, for any person … to make any inquiry about, whether in the form of application or otherwise, or to act upon adversely to the person involved, any arrest or criminal accusation of such individual not then pending against that individual [such person] which was followed by a termination of that criminal action or

---

**11.** Shapira Dep. 71–72, 74; Pl. Mem. 7.

**12.** Shapira Dep. 83; Pl. Mem. 7.

**13.** Jolly Dep. (Goldman Aff. Ex. B) 51.

**14.** Mabel Dep. (Goldman Aff. Ex. C) 81, 94.

**15.** Mabel Dep. 27; Pl. 56.1 St. ¶ 31.

**16.** N.Y. Exec. L. § 296, subd. 16 (McKinney 2001); N.Y.C. Ad. C. § 8–107(11).

**17.** The slightly different wording of the City provision appears in brackets following the corresponding wording of the State statute.

proceeding in favor of such individual [person] . . . in connection with . . . employment . . . ." [18]

The Court puts to one side whether the statutes even apply to an arrest record where, as here, (a) no criminal action or proceeding ever was commenced against plaintiff and, in consequence, (b) no such action or proceeding could have been terminated in his favor.[19] For even if they did, Schwab plainly did not violate them.

Securities and Exchange Commission ("SEC") Rule 17a–3, promulgated under the Securities Exchange Act of 1934 (the "Exchange Act"),[20] provides in relevant part as follows:

"(a) Every member of a national securities exchange who transacts a business in securities directly with others than members of a national securities exchange, and every broker or dealer who transacts a business in securities through the medium of any such member, and every broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended, . . . shall make and keep current the following books and records relating to his business:

\* \* \* \* \* \*

"(12)(i) A questionnaire or application for employment executed by each 'associated person' (as hereinafter defined) of such member, broker or dealer, which questionnaire or application shall be approved in writing by an authorized representative of such member, broker or dealer and shall contain at least the following information with respect to such person:

\* \* \* \* \* \*

"(g) *A record of any arrest* or indictment for any felony, or any misdemeanor pertaining to securities, commodities, banking, insurance or real estate . . . fraud, false statements or omissions, *wrongful taking of property* or bribery, forgery, counterfeiting or extortion, and the disposition of the foregoing." [21]

Schwab, one of the nation's largest brokerage firms, is a member of national securities exchanges and is registered pursuant to Section 15 of the Exchange Act.[22] The Act defines "associated person" very broadly to include, among others, "any employee" of a member of a national securities exchange.[23] In consequence, Schwab was obliged by Rule 17a–3 to keep and maintain current records of any arrests for larceny, among other offenses, of any person in its employ. Moreover, as the Rule expressly contemplates that such information be obtained by "application[s] for employment," the Rule at a minimum permits employers such as Schwab to inquire with respect to such arrests concerning prospective employees. It of course makes no difference whether plaintiff's focus is the inquiry to the NASD or Schwab's inquiry to him once it learned of the arrest. Plaintiff's first claim must be dismissed.

*B. The Discrimination Claim*

■ Defendant's motion for summary judgment, although brought under state

---

**18.** Emphasis added.

**19.** *Supra* note 3.

**20.** 15 U.S.C. § 78a *et seq.*

**21.** 17 C.F.R. § 240.17a–3(a) (emphasis added).

**22.** Def. 56.1 St. ¶¶ 1–2.

**23.** 15 U.S.C. § 78c(21).

Plaintiff relies upon a different definition of "associated person" that appears in 17 C.F.R. § 1.3(aa)(2). Pl. Mem. 2. The reference is frivolous. That section is a regulation promulgated by the Commodity Futures Exchange Commission under the Commodity Exchange Act, not by the SEC under the Exchange Act, the agency and statute relevant here.

law, is analyzed under the familiar rubric of *McDonnell Douglas Corp. v. Green.*[24] Defendant assumes, albeit *dubitante*, that plaintiff has offered evidence which, if credited, would establish a *prima facie* case.[25] Certainly defendant has advanced non-discriminatory reasons for its employment decision. The question therefore is whether the admissible evidence establishes the lack of a genuine issue of fact material to the question whether plaintiff's arrest was a factor in defendant's decision not to hire him.

The crux of this branch of defendant's motion is its assertion that the persons who decided not to hire plaintiff did not know of his arrest record.[26] But the evidence defendant has offered falls considerably short of proving any such thing. Assuming that it all were credited, it would establish no more than that Mr. Jolly was unaware of the arrest, that the interviewers did not discuss it among themselves, and that the relevant RMI employee in San Francisco was vague as to exactly what transpired—all of which could be true even if the arrest record played a part in the ultimate decision.

Plaintiff's discrimination case appears to be weak. Nevertheless, the Court's role on a motion for summary judgment is not to predict the winner at trial and rule accordingly. The questions whether defendant's decision maker(s) knew of the arrest and, if so, whether it was a factor in the decision are for trial.

## C. The Promissory Estoppel Claim

Plaintiff claims that he is entitled to damages based on promissory estoppel on the theory that Schwab reneged on its alleged promise of at least one of the jobs in question. This is mistaken for at least two reasons.

■ First, New York does not apply the doctrine of promissory estoppel in the employment context. A prospective employee, in other words, cannot sue an employer who reneges on a job offer or other employment promise on such a theory.[27]

■ Second, even if the doctrine were available in this context, plaintiff has not brought himself within it. The elements of such a claim, as plaintiff agrees, generally are:

> "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on that promise." [28]

As the plaintiff's testimony, quoted above, shows, his evidence, if credited, would not establish the requisite clear and unambiguous promise. Discussions about what salary a job applicant would like, which of two available jobs the applicant would prefer,

---

**24.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**25.** Def. Mem. 13–14.

**26.** *Id.* 16–17.

**27.** *E.g., Phansalkar v. Anderson Weinroth & Co., L.P.,* No. 00 Civ. 7872(SAS), 2002 WL 1402297, *17 (S.D.N.Y. June 26, 2002); *Miller v. Citicorp,* No. 95 Civ. 9728(LAP), 1997 WL 96569, *10 (S.D.N.Y. Mar.4, 1997); *Van Brunt v. Rauschenberg,* 799 F.Supp. 1467, 1473 (S.D.N.Y.1992); *Mayer v. Publishers Clearing House,* 205 A.D.2d 506, 507, 613 N.Y.S.2d 190 (2d Dept.1994); *Dalton v. Union Bank of Switzerland,* 134 A.D.2d 174, 176–77, 520 N.Y.S.2d 764, 766 (1st Dept.1987).

Plaintiff's efforts to distinguish these cases are meritless. So too is his reliance upon *Avne Systems Ltd. v. Marketsource Corp.,* No. 99 Civ. 11220(JSR), 2000 WL 1036035 (S.D.N.Y. July 27, 2000), and *Scher v. Llorente,* No. 92 Civ. 5206(MBM), 1993 WL 426840 (S.D.N.Y. Oct.22, 1993), neither of which involved the application of promissory estoppel in an employment case.

**28.** *Rogers v. Town of Islip,* 230 A.D.2d 727, 727, 646 N.Y.S.2d 158, 158 (2d Dept.1996).

and so on, especially with the caveat about checking with the NASD, simply are not sufficiently unequivocal, even if an interviewer were so unguarded as to say that an offer was "a sure thing." And plaintiff did not even go that far. When examined about whether Mr. Jolly actually said it was "a sure thing," he backed off and said that Mr. Jolly said only that an offer would be presented.

Therefore, the promissory estoppel claim also must be dismissed.

### Conclusion

Defendant's motion for summary judgment dismissing the complaint is granted except to the extent the complaint seeks relief for alleged discrimination on the basis of defendant's arrest.

SO ORDERED.